UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAXIM REUTOV,
    Plaintiff,

v.

FUTURE MOTION, INC.,
    Defendant.

CIVIL ACTION No. 19-10502-MPK[1]

MEMORANDUM AND ORDER
ON DEFENDANT, FUTURE MOTION, INC.'S
MOTION FOR SUMMARY JUDGMENT (#83).

KELLEY, U.S.M.J.

I. Introduction.

Maxim Reutov, proceeding pro se, filed a complaint against Future Motion, Inc., on March 8, 2019, alleging that he was injured in June 2018 while riding a battery-operated skateboard manufactured by defendant. (#1; #44-1 at 2–3.) Plaintiff filed an amended complaint on June 21, 2019, alleging claims for breach of implied warranty of merchantability, negligence, negligent infliction of emotional distress, breach of express warranty, breach of warranty of fitness for a particular purpose, strict products liability, and misrepresentation. (#44; #44-1 at 1, 3–6.) He sought over $10 million in damages. *Id.* at 7–8. On October 4, 2018, after his accident, but before he filed his claim here, plaintiff filed for Chapter 7 bankruptcy. (#84-1 at 7–13.) His debts were discharged and his bankruptcy case was closed on February 1, 2019, one month before he filed suit in this matter. (#1; #84 at 1.)

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 29 U.S.C. § 636(c). (#21.)

On October 16, 2019, defendant filed a motion for summary judgment based on the doctrine of judicial estoppel, as plaintiff did not disclose his potential lawsuit when he filed for Chapter 7 bankruptcy or at any time during the proceedings. (#84 at 1.)[2] Plaintiff filed multiple oppositions, each addressing discrete points. (##86–91.)

## II.  Facts.

For purposes of summary judgment, the facts are presented in the light most favorable to plaintiff as the non-moving party. *Caraballo-Caraballo v. Corr. Admin*., 892 F.3d 53, 56 (1st Cir. 2018) (citation omitted). The facts below are undisputed unless otherwise indicated.

In April or May of 2018, plaintiff purchased a "OneWheel," a battery-operated skateboard, manufactured by defendant. (#44-1 at 2; #87-4 at 9.) Plaintiff alleges that on June 18, 2018, he was riding his board on a bike path when it unexpectedly shut off, throwing him into the air. (#44-1 at 2–3.) Plaintiff landed on his head and shoulder, causing a concussion and shoulder injuries, and requiring a visit to the emergency room. *Id.* at 3. Plaintiff maintains that he suffers from constant back and neck pain, memory issues, and headaches as a result of the incident. *Id.* at 6.

Plaintiff emailed defendant's customer support team the day after the incident, informing them about what had occurred. (#87-1 at 1.) Several months later, on September 29, 2018, plaintiff emailed defendant's customer support team again, stating that he had "an issue" with the board. *Id.* at 4. On October 7, 2018, after conducting various tests at defendant's instruction, plaintiff sent the board back to defendant, so defendant could determine what was wrong with the board, and repair it, if necessary. *Id.* at 6–7. From October 7, 2018 through November 7, 2018, plaintiff and a member of defendant's customer support team corresponded regularly via email regarding the

---

[2] After defendant learned about plaintiff's bankruptcy filing, the court allowed defendant's request to file a dispositive motion addressed only to the issue of judicial estoppel. (##78-79.) The court makes no findings at this time concerning the merits of the case.

board's status. *Id.* at 6–15.³ In an October 30th email, plaintiff referenced the subject accident, noting that "the board shut off . . . when [he] was riding it and sent [him] to an emergency room[.]" *Id.* at 9.

Around the same time plaintiff was corresponding with defendant's customer support team, he was involved in bankruptcy proceedings in this district. On October 4, 2018, plaintiff filed for voluntary Chapter 7 bankruptcy. (#84-1 at 7–54.) As part of the bankruptcy proceedings, plaintiff was required to complete and sign a schedule, summarizing all his assets and liabilities. *Id.* at 14–21. Under part four of the schedule, "Financial Assets," plaintiff was instructed to "[d]escribe" any claim he had "against third parties, whether or not [he had] filed a lawsuit or made a demand for payment." *Id.* at 17, 20 ¶ 33. The schedule described "*[a]ccidents*, employment disputes, insurance claims, [and] rights to sue" as specific examples of claims that should be listed. *Id.* at 20 ¶ 33 (emphasis added). Despite his accident and ongoing correspondence with defendant's customer support team, plaintiff failed to reference the accident in his schedule. *Id.* The bankruptcy court entered a discharge order on January 15, 2019, and plaintiff's bankruptcy case was closed on February 1, 2019. *Id.* at 56–61. He filed his complaint in this court about one month later. (#1.)

For the reasons set out below, because plaintiff failed to disclose his potential claim against Future Motion, Inc. in his bankruptcy proceedings, defendant's motion for summary judgment (#83) is granted.

### III. Standard of Review.

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

³ After defendant's customer support team determined that the necessary repairs were not covered by plaintiff's warranty, in November 2018, plaintiff asked that the board be shipped back to him, without any repairs. (#87-1 at 10–15.)

56(a). To prevail on a motion for summary judgment, the moving party bears the initial burden of averring the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). Once the moving party asserts the absence of a genuine issue of material fact, the nonmovant must demonstrate the existence of a factual dispute with requisite sufficiency to proceed to trial. *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1st Cir. 2006). "[I]mprobable inferences, conclusory allegations, or rank speculation" cannot alone defeat summary judgment. *Ingram v. Brink's, Inc.*, 414 F.3d 222, 229 (1st Cir. 2005).

In determining whether summary judgment is proper, courts view the record in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the nonmovant's favor. *Caraballo-Caraballo,* 892 F.3d at 56 (citations omitted). Upon a party's motion, Rule 56 requires the entry of summary judgment when the non-moving party fails to establish the existence of any one essential element on which he will bear the final burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citations and quotation marks omitted).

IV.   Discussion.

"[A] failure to identify a claim as an asset in a bankruptcy is a prior inconsistent position that may serve as a basis for application of judicial estoppel, barring the debtor from pursuing the claim in a later proceeding." *Guay v. Burack*, 677 F.3d 10, 17 (1st Cir. 2012) (citing *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.D.C. 2010)). The First Circuit has explained that the primary utility of the doctrine of judicial estoppel "is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the justice system" by

"assum[ing] a contrary position in a subsequent proceeding simply because one's interests have changed." *Id.* at 16 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) and (quoting *Alt. Sys. Concepts v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004)) (internal quotation marks omitted); *see Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (holding that plaintiff/debtor "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis").

"There are two generally agreed-upon conditions" for judicial estoppel to apply. *Guay*, 677 F.3d at 16. "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." *Id.* (quoting *Alt. Sys. Concepts*, 374 F.3d at 33). Under the Bankruptcy Code, a debtor is required to disclose all assets to the bankruptcy court, in the form of a schedule, and amend his schedule if his circumstances change during the bankruptcy proceedings. *Id.* at 17 (citing 11 U.S.C. §§ 521(a)(1), 541(a)(1) and 541(a)(7)). Assets include "legal claims and potential claims[,]" or potential lawsuits that the debtor should know about. *Id.* (citing *Moses*, 606 F.3d at 793 and *Howe v. Richardson*, 193 F.3d 60, 61 (1st Cir.1999)). A failure to disclose present claims and potential claims that have accrued prior to or during a bankruptcy case is considered an inconsistent position, because these claims are the property of the bankruptcy estate, rather than of the debtor himself. *Id.* at 18–19; *Graupner v. Town of Brookfield*, 450 F. Supp.2d 119, 124–25 (D. Mass. 2006) (citing 11 U.S.C. § 521(a)(1)) (additional citations omitted).

"Second, the responsible party must have succeeded in persuading a court to accept its prior position." *Guay*, 677 F.3d at 16 (quoting *Alt. Sys. Concepts*, 374 F.3d at 33). "A bankruptcy court accepts a position taken in the form of omissions from bankruptcy schedules when it grants the debtor relief, such as discharge, on the basis of those filings." *Id.* at 18 (internal citations and quotation marks omitted).

Although not a formal requirement, a third factor in considering whether to apply judicial estoppel is "'whether the party seeking to assert an inconsistent position would derive an unfair advantage'" by doing so. *Id.* at 16 (quoting *New Hampshire*, 532 U.S. at 751). Where a party's failure to report a present or potential claim has resulted in the party's gaining an unfair advantage, that fact is "a powerful factor in favor of applying" the doctrine of judicial estoppel. *Id*. at 16-17.

In *Guay*, the plaintiff/debtor[4] filed a civil rights lawsuit in federal court while he was engaged in bankruptcy proceedings. *Id.* at 13–14. Although, unlike here, the plaintiff's cause of action for his civil rights claims did not accrue until after he filed for bankruptcy, plaintiff denied the existence of the claims and then failed to file amended schedules identifying his lawsuit as an asset, despite ample opportunities to do so. *Id.* at 14. After the bankruptcy court granted plaintiff a discharge, the defendants in the civil case raised the issue of judicial estoppel. *Id.* at 14–15. It was only then that plaintiff filed a report of unpaid Chapter 11 obligations in which he identified his claims in the civil lawsuit, to try to re-open the bankruptcy case. *Id.* at 15.

In addition to holding that the plaintiff's actions in his bankruptcy proceedings were "plainly inconsistent with [his] conduct in bringing" the civil rights claims, the First Circuit reasoned that the bankruptcy court accepted the false position plaintiff took with respect to his assets when it granted him a discharge. *Id.* at 18; *Howell v. Town of Leyden*, 335 F. Supp.2d 248, 251 (D. Mass. 2004) ("prerequisites of judicial estoppel [were] clearly met" when plaintiffs represented to bankruptcy court that they had no claims among their assets, but they actually had "multiple claims" against unrelated defendants, and the bankruptcy court accepted plaintiffs' representation in granting a discharge).

---

[4] Although both husband and wife were plaintiffs in the district court, only the husband, "the appellant, Kevin Guay," appealed to the First Circuit. *Guay*, 677 F.3d at 13.

6

The first two conditions the First Circuit articulated in *Guay* apply to the present case. Clearly, plaintiff failed properly to list his assets by not referencing the subject accident under part four of his bankruptcy schedule. The bankruptcy court also "accepted" plaintiff's position by discharging plaintiff's debts and closing his bankruptcy case. *See Guay*, 677 F.3d at 18; *In re Blanchette*, 582 B.R. 819, 826 (Bankr. D. Mass. 2018).

The First Circuit in *Guay* noted that in some circuits, "parties who fail to identify a legal claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they 'either lack[ed] knowledge of the undisclosed claims or ha[d] no motive for their concealment.'" 677 F.3d at 20 (quoting *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007)). Although the court in *Guay* stopped short of endorsing this exception, *id.* at 20 n.7, the court will nevertheless consider whether plaintiff has adduced any evidence for purposes of summary judgment such that it ought to apply to him.

Plaintiff first argues that he could not have included the claim on his schedule because at the time he initiated bankruptcy proceedings, defendant had the skateboard in its possession and "was supposed to fix it." (#86 at 1.) This argument is problematic for several reasons. First, not having an allegedly defective product in one's possession is not an impediment to filing suit. Second, this argument is severely undercut by plaintiff's admission that he discussed the matter with his bankruptcy attorney and "[they] agreed that [the claim] could not have been included because [plaintiff] did not have the product in [his] possession at the time of the filing but it can be easily done if appropriate." (#86 at 2.) It is undisputed that in November 2018, plaintiff asked that the board be shipped back to him, without any repairs. (#87-1 at 10–15.) Thus, even if one credits plaintiff's dubious assertion that his attorney counseled him to wait until he had the skateboard back before amending his filings in the bankruptcy proceedings, plaintiff presumably

7

received the skateboard back from the company well before his bankruptcy was discharged in January 2019. (#84-1 at 56-61.) Finally, the fact that plaintiff had an attorney representing him in the bankruptcy proceedings, and told the attorney about his potential suit against defendant, cuts against any inference that plaintiff lacked knowledge of the claims.

The court does not understand plaintiff's argument that his claims against defendant could not have been an asset because "defendant wanted to pay [him] nothing" at the time he filed for bankruptcy. (#86 at 3.) Indeed, this appears to be the very reason why a plaintiff would wish to bring a lawsuit.

Plaintiff further maintains that he did not know about the subject claims when he filled out his bankruptcy schedule, because "it is not practical to demand [that an] injured person [like himself], seeing doctors [and having] memory issues," fill out his bankruptcy schedule "properly[.]" (#87 at 2.) Even taking the facts in the light most favorable to plaintiff, plaintiff has not adduced evidence sufficient to show for purposes of summary judgment that his mental deficits prevented him from knowing about the claims here when he filled out his bankruptcy schedule, or that he failed to become aware of the claims as the bankruptcy matter progressed. Not only was plaintiff represented by counsel in the bankruptcy proceedings, plaintiff claims to have discussed the issue with his attorney. Further, as noted above, at the same time that he filed for bankruptcy, plaintiff was corresponding with defendant about his board, noting that he had "an issue" with it on September 29th, just five days before he filed his bankruptcy petition (#187-1 at 4), and, less than a month later, on October 30th, informing defendant that the subject incident sent him to the emergency room. *Id*. at 9. *See In re Blanchette*, 582 B.R. at 826 (plaintiff failed to produce evidence for summary judgment purposes to show that she acted in good faith, when she did "not

contend that she lacked knowledge of the facts that gave rise to the rights" she later sought to vindicate).

Nor has plaintiff provided evidence sufficient for the court to find that he was so impaired that he was incapable of understanding the plain language of the schedule. His neurological records, which he submitted as an attachment to one of his numerous oppositions to defendant's motion for summary judgment, indicate that when he consulted with a doctor in March 2019 for the problem of "short term memory loss," he reported to the doctor that when he returned to work a few weeks after the accident, "he didn't have any issues with his memory," but thought that he "started losing his wallet and keys more frequently than was previously normal for him in August or September [2018]." (#87-4 at 50.) He was able to work until February 2019, the same month that his bankruptcy was discharged, and he did not start seeing a neurologist until around that time. (#90 at 1; #91-5 at 1.) There is simply no information in the record to indicate that plaintiff was so incapacitated that he could not recognize his obligations under the law in bankruptcy.

Plaintiff proposes that if he made a "mistake" by not listing his present claim in his bankruptcy papers, then "the case can be reopened to add any missing assets so the creditors can be repaid." (#86 at 3.) Although at least one court in this district held that staying a case to allow the bankruptcy court to determine whether it had any interests it wished to assert was the proper remedy in a situation similar to the one here, *see Graupner*, 450 F. Supp.2d at 129 (holding that dismissing plaintiff's pre-bankruptcy petition claims was not the appropriate remedy for plaintiff's failure to disclose, because doing so "would create a potential windfall for defendants" if they had engaged in wrongdoing, and could potentially be unfair to plaintiff's creditors as the rightful holders of the claim), *Graupner* was decided before the First Circuit's decision in *Guay*. The First Circuit stated in *Guay* that "the integrity of the bankruptcy process is sufficiently important that

we should not hesitate to apply judicial estoppel even when it creates a windfall for an undeserving defendant" or deprives creditors of their potential claims. 677 F.3d at 19 (footnote omitted). The court adopted the reasoning of the Seventh Circuit that judicial estoppel is "'[a] doctrine that induces debtors to be truthful in their bankruptcy filings [and so] will assist creditors in the long run.'" *Id.* at 19 (quoting *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006)). Allowing a debtor to re-open his bankruptcy case and amend his bankruptcy filings, as plaintiff attempts to do here, would also "diminish the necessary incentive for the debtor to provide the bankruptcy court with a truthful disclosure of his assets[,]" as well as "the doctrine's ability to deter the debtor from pursing claims in the [d]istrict [c]ourt to which he is not entitled." *Id.* at 21 (internal citations omitted); *see Moses*, 606 F.3d at 800 (internal citations and quotation marks omitted) (permitting "debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them").

V. Conclusion and Order.

For the reasons stated, Defendant, Future Motion, Inc.'s Motion for Summary Judgment (#83) is GRANTED. Judgment shall enter for defendant.

January 6, 2020                                         /s/ M. Page Kelley
                                                        M. Page Kelley
                                                        United States Magistrate Judge